IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUANTUM IMAGING & THERAPEUTIC ASSOCIATES, INC., | : : : : : : : : : : : : | Civil No. 1:17-CV-00163 |
| Plaintiff, | | |
| v. | | |
| METROPOLITAN DIAGNOSTIC IMAGING, INC. D/B/A A.M.I.C., | | |
| Defendant. | | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion for summary judgment filed by Plaintiff Quantum Imaging & Therapeutic Associates, Inc. ("Quantum"). (Doc. 41.) Quantum asks the court to find that Defendant Metropolitan Diagnostic Imaging, Inc. d/b/a A.M.I.C. ("MDI") violated the terms of the parties' contract, resulting in damages of $147,905.94 to Quantum. Because the court finds that MDI breached its contract with Quantum, the court will grant the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

At the outset, the court notes that MDI failed to respond to Quantum's motion for summary judgment, statement of facts, or brief. Thus, pursuant to Local Rule 56.1, the material facts set forth in Quantum's statement of facts are deemed admitted.[1]

---

[1] Quantum relies on admissions by MDI in support of its statement of facts. (*See* Doc. 40.) MDI failed to respond to Quantum's request for admissions, thus, the requests are deemed admitted.

Quantum, a Pennsylvania corporation, entered into a written contract with MDI on March 26, 2014.  (Doc. 40, ¶¶ 1, 4; Doc. 40-3.)  The contract required Quantum to provide teleradiology services for MDI's facility in Chicago, Illinois.  (Doc. 40, ¶ 4.)  Specifically, Quantum would exclusively provide professional radiology and teleradiology services for MDI during its normal operating hours.  (Doc. 40, ¶ 7; Doc. 40-3, ¶ 2.1.)  The contract was for an initial term of five years with automatic renewal for successive five-year terms unless terminated by one of the parties in accordance with the contract.  (Doc. 40, ¶ 6; Doc. 40-3, ¶ 7.1.)  Under the contract terms, a Quantum radiologist had to be present at the MDI facility at least once every six months.  (Doc. 40, ¶ 8; Doc. 40-3, ¶ 2.1.)  Section 2.1(f) of the contract provides: "At all times when Radiologists are not physically present at Facility, Radiologists shall interpret all delineated radiological examinations and procedures by teleradiology . . ."  (Doc. 40-3, ¶ 2.1(f).)

Quantum agreed to assign its rights to receive payment from Medicare, Medicaid, and other third-party payors to MDI.  (Doc. 40, ¶¶ 12–13; Doc. 40-3, ¶ 2.5.)  In consideration for this assignment, MDI agreed to pay Quantum twenty percent, less a two percent billing and collection fee, of the "Net Collections"

---

Fed. R. Civ. P. 36(a)(3).  Facts admitted due to a party's failure to respond to requests for admissions are "conclusively established" and "may support a summary judgment motion." *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017).  Thus, the court considers the matters established through Quantum's unanswered requests for admissions as conclusively established facts.

amount MDI received when submitting claims for Quantum's services. (Doc. 40, ¶¶ 14, 16; Doc. 40-3, ¶ 4.1.) The contract defines "Net Collections" as "an amount equal to the gross technical and professional revenues collected and retained for all Imaging Services performed following the date hereof" minus "any contractual allowances, discounts, bad debt," refunds, or collection fees paid to unaffiliated collection agencies. (Doc. 40, ¶ 15; Doc. 40-3, ¶ 4.1.) MDI agreed to remit payment to Quantum pursuant to Section 4.1 of the contract by the twentieth day of each month for services performed during the prior month. (Doc. 40, ¶ 17; Doc. 40-3, ¶ 4.2.) MDI also agreed to provide Quantum with monthly reports within twenty days following the end of each calendar month setting forth the Net Collections for the prior month as well as the services provided each day by Quantum personnel. (Doc. 40, ¶18; Doc. 40-3, ¶ 3.6.)

Quantum began providing services under the contract in December 2014. (Doc. 40, ¶ 19.) Quantum acknowledged receipt of MDI's partial payment on September 10, 2015, but also advised that Quantum was still owed over $36,000.00, which was an estimated amount based on the monthly reports provided by MDI. (*Id.* ¶ 20.) In October 2015, the parties agreed that Quantum had read and interpreted 2,594 teleradiology images and studies. (*Id.* ¶ 22.) By email on December 17, 2015, MDI acknowledged that it had a past-due balance

with Quantum and would set up a payment plan for the outstanding balance. (*Id.* ¶ 23.)

From December 2014 through December 2015, Quantum "read and interpreted several thousand electronic and non-electronic radiological renderings and studies for MDI in accordance with" the contract. (*Id.* ¶ 25.) MDI failed to provide timely and accurate monthly reports as required by the contract. (*Id.* ¶ 26.) MDI further failed to compensate Quantum for the professional services provided in accordance with the contract. (*Id.* ¶¶ 27–28.) MDI was billed for the professional radiology services provided by Quantum in excess of $147,905.94 but refused to pay that amount. (*Id.* ¶¶ 29–30.) Rather, MDI received and retained payments made by third-party payors for services provided by Quantum yet failed to compensate Quantum under the contract. (*Id.* ¶¶ 31–32.)

This case was initiated by Quantum on January 27, 2017, by filing a four-count complaint. (Doc. 1.) An amended complaint was filed on April 13, 2017, alleging claims for breach of contract and quantum meruit. (Doc. 11.) MDI answered the amended complaint and asserted affirmative defenses. (Doc. 12.) On November 28, 2017, MDI filed a suggestion of bankruptcy. (Doc. 21.) The court stayed the case based on that suggestion of bankruptcy on December 13, 2017. (Doc. 23.)

Following this case being reassigned to the undersigned, the court ordered that the parties file a status report on August 10, 2021.  (Doc. 24.)  The parties complied and the court scheduled a case management conference.  (Docs. 25, 26, 27.)  On September 14, 2021, MDI's counsel requested to withdraw from this case because he did not have any communication with the present owners of MDI, nor did he ever represent MDI through its present owners.  (Doc. 29.)  Further, counsel no longer worked at the law firm that represented the prior owner of MDI.  (*Id.*)  Over Quantum's objection, the court permitted MDI's counsel to withdraw from this case.  (Docs. 29-1, 31.)  The court required Quantum to serve all court orders, discovery requests, and filings on MDI's registered service agent until new counsel appeared for Defendant.  (Doc. 37.)  Thereafter, on January 24, 2022, the court issued a case management order.  (Doc. 39.)

On April 29, 2022, Quantum filed the instant motion for summary judgment, statement of facts, and brief in support.  (Docs. 40, 41, 42.)  MDI has not responded to this motion,[2] thus, it is ripe for review.

---

[2] MDI has not participated in this case since the court permitted its counsel to withdraw on October 12, 2021.

## JURISDICTION

The court has diversity jurisdiction in this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states. Furthermore, venue is proper under 28 U.S.C. § 1391 because Quantum's principal place of business is in the Middle District of Pennsylvania and a substantial part of the acts or omissions in this case occurred in this District.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher*

*Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter."  *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial."  *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Quantum argues that the court should grant judgment in its favor and against MDI as to its breach of contract claim. (Doc. 42, pp. 5–7.)[3] In accordance with paragraph 10.10 of the contract, Quantum also submits that the court should apply New York substantive contract law in this diversity action. (*Id.* at 5; Doc. 40-3, ¶ 10.10.)

At the outset, the court must determine the appropriate choice of law. Because the court is exercising diversity jurisdiction in this case, the court applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000.) As argued by Quantum, the contract at issue in this case contains a choice of law provision designating New York law as applicable to any disputes. (Doc. 40-3, ¶ 10.10.) Thus, the court will apply New York law to the breach of contract claim analyzed herein.

---

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

Under New York law, a plaintiff must prove the following elements for a breach of contract claim: (1) the existence of a contract; (2) that the plaintiff performed under the contract; (3) that the defendant breached its contractual obligations; and (4) that the defendant's breach resulted in damages to the plaintiff. *Canzona v. Atanasio*, 118 A.D.3d 837, 838–39 (N.Y. App. Div. 2014) (quoting *Dee v. Rakower*, 112 A.D.3d 204, 208–09 (N.Y. App. Div. 2013)).

Here, Quantum and MDI entered into a written contract on March 26, 2014. (Doc. 40, ¶ 4; Doc. 40-3.)  As to the second element, Quantum established that it provided radiology and teleradiology services pursuant to the contract from on or about December 2014 through December 2015.  (Doc. 40, ¶¶ 19–20, 22–23, 25.) In exchange for providing radiology and teleradiology services under the contract, MDI was required to pay Quantum by the twentieth day of each month.  (Doc. 40-3, ¶¶ 4.1, 4.2.)  MDI was also required to provide monthly reports with the Net Collections and services provided by Quantum.  (*Id.* ¶ 3.6.)  Quantum established that MDI failed to make the required payments and provide the required reports, therefore, the court concludes that MDI breached its contractual obligations to Quantum.  Finally, Quantum further established that MDI's breach resulted in damages in the amount of $147,905.94 for services rendered but not paid.

Accordingly, the court holds that Quantum has proven its breach of contract claim against MDI and will grant the motion for summary judgment in Quantum's favor.[4]

## CONCLUSION

Accordingly, for the reasons stated herein, the court will grant Quantum's motion for summary judgment.  (Doc. 41.)  An appropriate order will issue.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: February 15, 2023

---

[4] Although Quantum also pleaded a quantum meruit claim, Quantum did not pursue that claim on summary judgment.  For this reason and because quantum meruit relief is "an alternative to a cause of action alleging breach of contract," the court need not reach this claim.  *Thompson v. Horowitz*, 141 A.D.3d 642, 643–44 (N.Y. App. Div. 2016).